**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **MARIA MOLINA OVIEDO,** § <br> **INDIVIDUALLY AND AS PERSONAL** § <br> **REPRESENTATIVE OF THE ESTATE** § <br> **OF FRANCISCO JAVIER OVIEDO-** § <br> **RAMIREZ, DECEASED, AND AS NEXT** § <br> **OF FRIEND OF MARIA MAGDALENA** § <br> **OVIEDO, JASMINE J. OVIEDO AND** § <br> **MARK A. OVIEDO** § <br>     **Plaintiffs,** § <br> § <br> **v.** § <br> § <br> **BORAL INDUSTRIES, INC. AND** § <br> **BORAL BRICKS, INC,** § <br>     **Defendants.** § | | **Civil Action No. _____** <br><br><br> **Jury Trial Demanded** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, Maria Molina Oviedo, Individually and as Personal Representative of the Estate of Francisco Javier Oviedo-Ramirez and as Next Friend for Maria Magdalena Oviedo, Jasmine J. Oviedo and Mark A. Oviedo (hereinafter referred to as "Plaintiffs") complaining of Defendants, Boral Industries, Inc. and Boral Bricks, Inc. (hereinafter referred to as "Defendants or Boral Defendants"), and for cause of action would respectfully show the Court the following:

**A. PARTIES**

1. Plaintiff, Maria Molina Oviedo, a resident of the State of Texas, is the surviving spouse of Francisco Javier Oviedo-Ramirez, Deceased, and brings this action individually, and as Personal Representative of the Estate of Francisco Javier Oviedo-Ramirez, Deceased, pursuant to the Texas Wrongful Death Act, TEX. CIV. PRAC. & REM. CODE §§ 71.001

through 71.012, the Texas Survival Act, TEX. CIV. PRAC. & REM. CODE § 71.021, and on behalf of all wrongful death and survival beneficiaries.

2. At the time of death, Mr. Ramirez was survived by his minor children, Maria Magdalena Oviedo, Jasmine J. Oviedo and Mark A. Oviedo.

3. Defendant Boral Industries, Inc. is a foreign corporation that is formed under the laws of the State of California with its principal place of business in the State of Georgia. Defendant Boral Industries, Inc. may be served with process through its registered agent, National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, TX 77062.

4. Defendant Boral Bricks, Inc. is a foreign corporation with its principal place of business and residence in the State of Georgia. Defendant Boral Bricks, Inc. may be served with process through its registered agent, National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, Texas 77062.

### B.  JURISDICTION

5. The Court has jurisdiction over this lawsuit under the provisions of 28 U.S.C.A. § 1332 because suit is between a citizen of Texas and business entities formed under the laws of foreign states. Additionally, the amount in controversy exceeds $75,000 exclusive of interest and costs.

### C.  VENUE

6. Venue is proper in this district under the provisions of 28 U.S.C.A. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this district.

### D.  CONDITIONS PRECEDENT

7. All conditions precedent have been performed or have occurred.

## E. RESPONDEAT SUPERIOR

8. Whenever it is alleged in this Complaint that a Defendant did any act or thing, it is meant that the Defendant's agents, servants, employees, parent agents, ostensible agents, agents by estoppel and/or representatives did such act or thing, and at the time such act or thing was done, it was done with the authorization of the Defendants or was done in the normal routine course of the agency or employment of the Defendant.

## F. FACTS

9. Boral Defendants are the largest brick manufacturers in the United States operating more than 162 locations across North America, including a plant in Marshall, Texas. In August of 2010 Francisco Javier Oviedo-Ramirez was performing intense labor in extreme conditions at the Marshall Boral plant when he began to display signs of heat exhaustion. Mr. Ramirez exhibited tell-tell signs of exhaustion for several days leading up to August 4, 2010. On the morning of August 10th, Mr. Ramirez's symptoms progressed and he began exhibiting signs of heat stroke.  Co-workers reported him as being disoriented and lethargic. Even though he was experiencing signs and symptoms of heat stroke, he was required to continue performing intense labor in the extreme conditions. At approximately 12:30 Mr. Ramirez became unconscious. Upon arrival to the emergency room his core temperature was 107.9 degrees. Mr. Ramirez languished in a coma for more than two weeks before succumbing to his injuries on or about August 20, 2010.

10. At all relevant times, Maria Molina Oviedo, the surviving wife of Francisco Javier Oviedo-Ramirez, was a resident of Harrison County in the State of Texas.  She is also the personal representative of the Estate of Francisco Javier Oviedo-Ramirez.

11.     Maria Magdalena Oviedo, a minor, is the natural daughter of Maria Molina Oviedo and Francisco Javier Oviedo-Ramirez, Deceased, and resides with Maria Molina Oviedo. Maria Molina Oviedo represents Maria Magdalena Oviedo as her parent and natural guardian.

12.     Jasmine J. Oviedo, a minor, is the natural daughter of Maria Molina Oviedo and Francisco Javier Oviedo-Ramirez, Deceased, and resides with Maria Molina Oviedo. Maria Molina Oviedo represents Jasmine J. Oviedo as her parent and natural guardian.

13.     Mark A. Oviedo, a minor, is the natural son of Maria Molina Oviedo and Francisco Javier Oviedo-Ramirez, Deceased, and resides with Maria Molina Oviedo. Maria Molina Oviedo represents Mark A. Oviedo as his parent and natural guardian.

### G. COUNT 1 – GROSS NEGLIGENCE OF THE BORAL DEFENDANTS

14.     Defendants are legally responsible for Mr. Ramirez's illness and his death in that they:

(a)     willfully and knowingly forced or allowed him to engage in intense manual labor without proper protection and precautions for the extreme conditions at the Marshall plant on August 4, 2010 while he was still ill from heat exhaustion that he was previously suffering from.

(b)     willfully failed to care for or monitor him properly during his August 4, 2010 heat exhaustion/stroke.

(c)     knowingly left him unattended and without proper care or aid for a crucial period as he developed heatstroke on the job on August 4, 2010.

(d)     knowingly and willfully failed to take steps to diagnose or assess his condition in a timely manner.

(e)     neglected to administer the aid or attention that he needed.

(f)     knowingly and willfully created a dangerous work environment that proximately cause Mr. Ramirez's untimely death.

15.     Mr. Ramirez's heatstroke and his death were utterly and entirely preventable. Had those responsible for his safety and care, including Defendants, exercised even a slight

amount of care in carrying out their personal duties to Mr. Ramirez, his illnesses and death could and would have been avoided.

16.    Mr. Ramirez's heat illness symptoms portended such extreme susceptibility to heat illness and constituted such a definite pattern of if that no minimally competent employer could have mistaken it or overlooked its significance.

17.    There is no doubt that Defendants were aware of Mr. Ramirez's prior illnesses and of the fact that failing to take remedial measures would subject him to further heat illness.

18.    Despite the extreme conditions that existed at the plant in August 2010, the individual Defendants did not take necessary steps to acclimatize Mr. Ramirez and did not change, recommend changing, or make the slightest effort to change the planned times or duration for the extreme manual labor they required of him.

19.    As a result of working that day under those conditions, Mr. Ramirez collapsed on August 4, 2010.  Due to the pressures placed on him by his employer, Mr. Ramirez attempted to return to work even though he was observed by co-workers to be clearly suffering from the effects of heat stroke.  Even though Boral had actual acknowledge of Mr. Ramirez's condition it willfully failed to properly evaluate him and seek care until after he collapsed.

20.    Defendants' grossly negligent conduct (acts or omissions) was more than momentary thoughtlessness or inadvertence. Rather, Defendants' conduct, when viewed objectively from the standpoint of Defendants at the time of these events, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Mr. Ramirez. Moreover, Defendants had actual, subjective awareness of the risk involved but, nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of others, namely Mr. Ramirez.  Said gross negligence directly and proximately cause the death of Mr. Ramirez.

### H. COUNT 6 – WRONGFUL DEATH

21. Plaintiff Maria Molina Oviedo is the surviving wife of Francisco Javier Oviedo-Ramirez. Plaintiff Maria Molina Oviedo and Francisco Javier Oviedo-Ramirez had been married for approximately 20 years and enjoyed a happy marriage. Mr. Ramirez had assisted in the couple's financial support, rendered personal services to Maria Molina Oviedo, provided marital care to Maria Molina Oviedo and gave her advice and counsel. Except for his wrongful death, Mr. Ramirez would have continued to provide all of such benefits to Maria Molina Oviedo for the balance of her life. The wrongful death of her husband has caused Plaintiff to suffer the loss of an invaluable personal relationship. Mr. Ramirez was a source of comfort, inspiration and companionship to Plaintiff. By Mr. Ramirez's death, Plaintiff has suffered loss of such personal relationship, loss of consortium by their marriage relationship, loss of the love and affection which her husband had for her, loss of an integral part of the family unit and destruction of the family unit, loss of her husband's society and companionship, and grief, sorrow, bereavement and mental anguish from experiencing the death and loss of a person who meant so much to her.

22. Maria Magdalena Oviedo, Jasmine J. Oviedo and Mark A. Oviedo, have suffered pecuniary loss from the death of their father, including loss of the care, maintenance, support, services, advice, counseling and contributions of a pecuniary value that they would in reasonable probability, have received from their father during his lifetime, had he lived. They have suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. They have suffered mental anguish, grief and sorrow as the result of tragic and untimely death of their father, Francisco Javier Oviedo-Ramirez, and are likely to continue to suffer such for a long time in the future.

23. Maria Magdalena Oviedo, Jasmine J. Oviedo and Mark A. Oviedo have suffered a loss of inheritance, that, in all reasonable probability, the decedent would have left to them by will or inheritance.

24. As a proximate result of Defendants' negligence and gross negligence, Plaintiff, Maria Molina Oviedo, in her individual capacity, suffered and is entitled to recover the following damages:

 a. Loss of companionship and society meaning the loss of the positive benefits flowing from the love, comfort, companionship, and society that Maria Molina Oviedo, in reasonable probability, would have received from Mr. Ramirez, her husband of twenty years, had he lived;

 b. Mental anguish meaning the emotional pain, torment, and suffering experienced by Maria Molina Oviedo because of the death of her husband, Mr. Ramirez;

 c. Pecuniary loss meaning the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Maria Molina Oviedo, in reasonable probability, would have received from Mr. Ramirez had he lived.

25. As a proximate result of Defendants' negligence and gross negligence, Maria Magdalena Oviedo, Jasmine J. Oviedo and Mark A. Oviedo, in their individual capacity, suffered and are entitled to recover the following damages:

 a. Loss of companionship and society meaning the loss of the positive benefits flowing from the love, comfort, companionship, and society that they, in reasonable probability, would have received from their father, Mr. Ramirez, had he lived;

 b. Mental anguish meaning the emotional pain, torment, and suffering experienced by Maria Magdalena Oviedo, Jasmine J. Oviedo and Mark A. Oviedo because of the death of their father, Mr. Ramirez;

 c. Pecuniary loss meaning the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Maria Magdalena Oviedo, Jasmine J. Oviedo and Mark A. Oviedo, in reasonable probability, would have received from their father, Mr. Ramirez, had he lived.

26. As a result of Defendants' negligence and/or gross negligence, Mr. Ramirez died a terrible death. Mr. Ramirez was 52 years of age at the time of his death. Mr. Ramirez was a devoted husband. He was loving, kind and affectionate to his wife and children. Mr. Ramirez remained alive for a short time during his ordeal, and during this period and until his death he suffered excruciating physical and mental pain from such injuries, and suffered extreme mental anguish from the knowledge that he would likely die from such injuries. As a result of Defendants' negligence and/or gross negligence, Mr. Ramirez suffered and his estate is entitled to recover the following damages:

   a. Conscious physical pain, emotional pain, torment, and suffering experienced by Mr. Ramirez before his death as a result from the heatstroke, ultimately killing him;

   b. Emergency medical expenses for emergency medical care provided by EMS and Good Shepherd Medical Center;

   c. Funeral and burial expenses.

27. The law affords an award of exemplary damages as the sole vehicle for the civil punishment of a company. In other words, in this context, the law recognizes that it is impossible to put a company in jail; consequently, the law provides exemplary damages to punish a company in certain situations. If it is shown that Defendants were grossly negligent, and the jury decides that this is wrong and it ought to be stopped and people ought to be protected, Defendants ought to be punished with an award of punitive damages large enough that Defendants are held up as an example to influence other companies not to be grossly negligent in failing to provide a safe workplace for their employees. Plaintiffs therefore seek exemplary damages.

## I. DAMAGES

28. By reason of all the above and as a direct and proximate result of Defendants' conduct, Plaintiffs suffered the following injuries and damages:

      a.    Past medical bills;

      b.    Loss of earning capacity;

      c.    Loss of consortium;

      d.    Mental anguish;

      e.    Pain and suffering; and

      f.    Funeral and burial expenses.

## J.  JURY DEMAND

29.  Plaintiffs demand a jury trial and tenders the appropriate fee with their Complaint.

## K.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be duly cited to appear and answer this Complaint and that upon final hearing Plaintiffs recover as follows:

      a.    Actual damages;

      b.    Exemplary damages;

      b.    Prejudgment and post-judgment interest as provided by law;

      c.    Costs of Court; and

      d.    Such other and further relief to which the Plaintiffs may be justly entitled.

Respectfully submitted,

**THE MONSOUR LAW FIRM**

/s/ Douglas C. Monsour
Douglas C. Monsour
State Bar No. 00791289
Garrett W. Wilson
State Bar No.  24051536
404 North Green Street
Post Office Box 4209
Longview, Texas  75606
(903) 758-5757
(903) 230-5010 (fax)
doug@monsourlawfirm.com
garrett@monsourlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**